# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CATHERINE P. MUSA<br>*Plaintiff* | : | CIVIL ACTION |
| | : | |
| | : | NO. 13-2847 |
| v. | : | |
| | : | |
| SOAR CORPORATION<br>*Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                November 18, 2014

# MEMORANDUM OPINION

## INTRODUCTION

Before this Court is a motion for summary judgment filed by Soar Corporation ("Defendant") pursuant to Federal Rule of Civil Procedure (Rule) 56, which seeks the dismissal of the employment discrimination claims brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §951 *et seq.*, and the claims of retaliation and unpaid wages brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §333.101 *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §260.1 *et seq.* [ECF 27]. Catherine Musa ("Plaintiff") filed a response in opposition, [ECF 30], and Defendant filed a reply memorandum. [ECF 32]. This motion for summary judgment has been fully briefed and is appropriate for consideration.

For the reasons stated herein, the motion for summary judgment is granted, *in part*, and denied, *in part*.

**BACKGROUND**

On May 22, 2013, Plaintiff filed a complaint against Defendant, her former employer. [ECF 1]. Defendant filed a motion to dismiss the complaint, [ECF 5], which Plaintiff opposed. [ECF 7]. By Order dated August 29, 2013, Defendant's motion to dismiss was granted, without prejudice. [ECF 8]. Plaintiff filed a motion to reconsider, [ECF9], which was granted, thereby permitting Plaintiff leave to file an amended complaint. [ECF 10].

On September 23, 2013, Plaintiff filed an amended complaint asserting claims of race and gender discrimination under Title VII and the PHRA, and claims of retaliation and failure to pay wages under the FLSA and the corresponding Pennsylvania statutes. [ECF 11]. On June 24, 2014, Defendant filed the instant motion for summary judgment.

Briefly, the facts relevant to Defendant's motion for summary judgment are as follows:[1]

> Defendant is an outpatient substance abuse treatment facility specializing in methadone treatment and has locations in Northeast Philadelphia and Chester, Pennsylvania.
>
> Plaintiff (a Caucasian female) began working for Defendant as a full-time staff counselor on January 24, 2011, and was initially supervised by Caroline Roy ("Roy") and later by Jonathan Marino ("Marino") (both Caucasian). At the time of her hiring, Plaintiff was provided with a copy of Defendant's anti-discrimination policy.
>
> From 2008 through 2012, Defendant responded to three requests for proposals ("RFPs") from Community Behavioral Health ("CBH") to provide counseling services, and made certain representations; *to wit*: on October 6, 2008, Defendant represented that it "strive[d] to meet the needs of our primary target population (largely African-American) at all points of service" and that "it is the intention of SOAR in SW to hire and staff the MAT with representatives of the cultural mix that can be found in the SW area of Phila[delphia];" and on August 3, 2010, in response to another RFP Defendant certified that it "intend[ed] to work with M[inority]/W[omen]/D[isabled] Business Enterprises with the goal of reaching 25% of the dollars subcontracted to for-profit M/W/DSBE

---

[1] For purposes of Defendant's motion for summary judgment, this Court construes the facts and evidence in the light most favorable to Plaintiff, the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Mensinger*, 293 F.3 641, 647 (3d Cir. 2002).

2

subcontractors within 12 months of contract award." Defendant was granted a provisional contract with CBH. By early 2011, CBH was Defendant's primary referral and funding source.[2]

In July 2011, Roy took a family leave of absence. Prior to going on leave, Roy recommended to the Executive Director, Robert Stringer ("Stringer"), that either Ann Riordan ("Riordan") or Ruth Zangerle ("Zangerle"), both females, temporarily take over her duties. After being told by Stringer that neither was interested in the position, Roy recommended Marino, who was given the position. Plaintiff contends that when Roy returned to work in early October 2011, Stringer told Roy that Marino was going to retain most of her former responsibilities because Marino was a man.

According to Plaintiff, Stringer treated her and other female employees in a condescending and patronizing manner; and that two other female employees have filed court gender discrimination claims against Defendant, based in part, on Stringer's alleged discriminatory treatment of women.

Plaintiff further contends that Stringer told her and Roy that Defendant had to hire more minorities and increase diversity among the counselors because of Defendant's contract with CBH. Plaintiff, however, concedes that Stringer never told her that Defendant was going to fire non-minority counselors, like Plaintiff, in order to achieve an increase in the diversity of its workforce.

As to the FLSA claims, Plaintiff acknowledges that Defendant's policies required that any counselor who wanted to work overtime had to obtain approval in advance, and that she did not always obtain advance approval to work overtime. Although she could not state precisely the number of overtime hours worked without being paid, Plaintiff approximated that she was owed approximately 390 hours in unpaid overtime.

Plaintiff testified that Defendant had a policy of requiring its employees to clock out for lunch and at the end of eight hours even if employees were still working. Notwithstanding the policy, Plaintiff would enter on the time records the number of hours that she actually worked. Plaintiff, however, contends that when she went back into the system to check the actual time worked, she found that the hours she had entered had been erased or manipulated in some way.

---

[2] Following Plaintiff's termination, Defendant responded to another RFP from CBH on April 10, 2012. In the response, Defendant represented that " [w]ithin the past two years SOAR became aware of broader needs within the surrounding communities," and that "[i]n addition to a large Italian population, [Defendant] also provides recovery oriented outpatient treatment and support services to a growing Black, Latino, and LGBT community." Defendant also attached an organizational chart identifying the race of each of its employees. As discussed later, Defendant's alleged statements and policies with regard to its diversity goals, including this 2012 statement, provide insufficient evidence that Plaintiff was terminated because of her race.

3

Defendant denies that any such manipulation occurred. Plaintiff also contends that she complained to Stringer, and Andrea Mruk ("Mruk"), a human resources director, about the clock out requirements and Defendant's refusal to pay her for all time worked.

As a staff counselor, Plaintiff was given a caseload of 35 clients. Her job responsibilities included meeting with these clients for one hour counseling sessions and running two group counseling sessions per week. Defendant required every counselor, including Plaintiff, to complete 25 one hour patient counseling sessions and two 1.5 hour group sessions for a total of 28 hours of counseling work per week. During her deposition, Plaintiff admitted that she never satisfied the required 100 hours of counseling sessions in any particular month.

On December 5, 2011, Defendant terminated Plaintiff's employment for alleged performance-related reasons, *to wit*: low productivity, low patient numbers, and insufficient or deficient client information and/or documentation. Plaintiff disputes the reasons offered for her termination and insists it was based on racial and gender discrimination.

After Plaintiff was terminated, Plaintiff hired two women, one Caucasian and one African-American, to fill either Plaintiff's role or a comparable position. In 2011, Defendant hired 18 new counselors and supervisors, 10 of whom were Caucasian (including Plaintiff), and eight of whom were not Caucasian. Of Defendant's 18 hires, 10 were women and eight were men. Defendant terminated seven employees in 2011: three Caucasian women (including Plaintiff), two Caucasian men; one African American woman; and one African American man. Marino, Stringer, Mruk and Besden are all Caucasian.

**LEGAL STANDARD**

Rule 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 289 F.3d 201, 210 (3d Cir. 2002) (quoting *Abraham v. Raso*, 183 F. 3d 279, 287 (3d Cir. 1999)). Further,

4

under Rule 56, the court must view the evidence in the light most favorable to the non-moving party. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011).

Rule 56(c) further provides that the movant bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which the movant "believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *See* Rule 56(c)(1)(A-B). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 476 U.S. 574, 586 (1986). The nonmoving party may not rely on bare assertions, conclusory allegations or suspicions, *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982), nor rest on the allegations in the pleadings. *Celotex*, 477 U.S. at 324. Rather, the nonmoving party must "go beyond the pleadings" and either by affidavits, depositions, answers to interrogatories, or admissions on file, "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* Thus, a grant of summary judgment is appropriate where the moving party has established that

there is no genuine dispute of material fact and the "moving party is entitled to judgment as a matter of law." *Id.* at 322; Rule 56(c).

**DISCUSSION**

Plaintiff claims that Defendant unlawfully discriminated against her on the basis of race and gender in violation of Title VII and the PHRA when terminating her employment. Under Title VII and the PHRA, it is unlawful for an employer "to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race [or] . . . sex." 42 U.S.C. §2002e2(a)(1); 43 Pa. C.S. §951 *et seq.*[3] Defendant moves for summary judgment on these claims on grounds that Plaintiff has not made a *prima facie* case of race or gender discrimination and has, likewise, failed to show that Defendant's legitimate nondiscriminatory reasons for terminating her employment are a pretext for race and/or gender discrimination.

A plaintiff can bring Title VII race and gender discrimination claims under either the indirect evidence burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), or under the "mixed-motive" direct evidence theory first introduced in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775 (1989). Under the traditional *McDonnell Douglas* framework, a plaintiff must first make a *prima facie* case of race or gender discrimination under Title VII by showing, by a preponderance of evidence, that she: (1) "is a member of a protected class," (2) is "qualified for the job from which she was discharged," and (3) "that others, not in the protected class, were treated more favorably." *Hugh v. Butler Cnty.*

---

[3] PHRA claims are to be analyzed under the same standards as claims brought under Title VII. *Grande v. State Farm Mut. Auto Ins. Co.*, 83 F. Supp.2d 559, 562 (E.D. Pa. 2000).

6

*Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005); *see also Scheidemantle v. Slippery Rock University*, 470 F.3d 535, 539 (3d Cir. 2006).

When a plaintiff bringing a race discrimination claim under Title VII is not a member of a racial minority and is, instead, asserting a claim for "reverse discrimination," such as Plaintiff, the *prima facie* framework is modified such that she must show: (1) "sufficient evidence to allow a factfinder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII," and (2) that he or she has suffered an adverse employment action. *Iadimarco v. Runyon*, 190 F.3d 151, 161 (3d Cir. 1990).

Once Plaintiff establishes a *prima facie* case of discrimination, the burden shifts to Defendant "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If Defendant satisfies this phase, the burden shifts back to Plaintiff to prove that the legitimate reason(s) offered by Defendant are merely a pretext for discrimination. *Fuentes v. Perskie*, 32 F.3d 759, 804-05 (3d Cir. 1994). To make a showing of pretext, she must provide evidence "from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764.

Under *Fuentes,* Plaintiff must "present evidence contradicting the core facts put forth by the employer as the legitimate reasons for its decision." *See Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). Plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765. *Fuentes* further requires Plaintiff to present evidence that suggests that

7

unlawful discrimination was more likely than not a motivating or determining factor in Defendant's decision to terminate her employment. That is, Plaintiff must do more than show that Defendant's proffered reason was wrong or mistaken. She must demonstrate that Defendant acted with discriminatory animus. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 283 (3d Cir. 2001). Plaintiff can meet this burden by pointing to evidence "that the employer has previously discriminated against her, that the employer has discriminated against other persons within the plaintiff's protected class or within another class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998). Where a plaintiff presents evidence of similarly situated non-class members to sustain her burden at the pretext stage, she must show with some specificity that the comparators were more favorably treated. *Id.* at 646.

As noted, a plaintiff may also bring a Title VII claim under the "mixed-motive" theory in which "an unlawful employment practice is established when the complaining party demonstrates that race, [or] . . . sex . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. §2000e-2(m). In a "mixed-motive" case, the plaintiff must first show that a Title VII protected trait was a "substantial factor" in the defendant's employment decision. *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002). A plaintiff can satisfy the "substantial factor" burden with "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence that race [or] . . . sex . . . was a motivating factor for any employment practice." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003). When the plaintiff has made a showing that a Title VII protected trait was a "substantial factor" in the defendant's decision, the burden shifts to the defendant to show its limited

8

affirmative defense "that it would have taken the same action in the absence of the impermissible motivating factor." *Makky v. Chertoff*, 541 F.3d 205, 213 (3d Cir. 2008).

Under these legal principles, this Court will address Plaintiff's claims of gender and race discrimination, *ad seriatim*.

### *Plaintiff's Title VII Gender Discrimination Claim*

Plaintiff claims that she was unlawfully terminated from her employment in violation of Title VII and the PHRA and contends that she has presented sufficient evidence under both the "mixed motive" theory and the traditional *McDonnell Douglas* framework to substantiate her claim for gender discrimination.

To make out a *prima facie* claim of gender discrimination for purposes of the *McDonnell Douglas* framework, Plaintiff must show the that she: (1) is a member of a protected class; (2) was qualified for the position at issue; (3) was discharged; and (4) that either the position was ultimately filled by a person not of the protected class, *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996), or that similarly situated non-protected persons were treated more favorably. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir. 1993).

There is no dispute that Plaintiff has met the first three prongs. With regard to the fourth prong, Plaintiff must show that either the position was ultimately filled by a person not of the protected class or that similarly situated non-protected persons were treated more favorably. Although Plaintiff disputes which of the two women replaced her – an African American or a Caucasian woman – there is no dispute that she was replaced by a woman. Therefore, Plaintiff cannot show that she was replaced by a person not of the protected class.

9

Alternatively, Plaintiff makes no attempt to show that other similarly situated non-protected persons, *i.e.*, males, were treated more favorably than she. *See Scheidemantle*, 470 F.3d at 539. To the contrary, Defendant has presented evidence to establish that male employees in the same position as Plaintiff were terminated for the same reasons that Defendant offers for Plaintiff's termination, *i.e.*, low productivity. (*See* Defendant's Brief at p. 27). Because Plaintiff has not presented any facts or evidence to refute Defendant's evidence on this issue, Plaintiff has failed to establish a *prima facie* case of gender discrimination.

Under the "mixed-motive" theory, Plaintiff must first show that a Title VII protected trait was a "substantial factor" in the decision to terminate her employment. *Fakete*, 308 F.3d at 338. To meet this burden, Plaintiff must present "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that . . . sex . . . was a motivating factor for any employment practice." *Desert Palace*, 539 U.S. at 101. In her attempt to comply, Plaintiff points to evidence that: (1) Stringer, a male supervisor, replaced another female employee (Roy), who was on temporary leave, with a male substitute (Marino) despite Roy's recommendation that one of two female employees (not Plaintiff) cover her duties during her absence; (2) Stringer was allegedly condescending and patronizing toward Plaintiff and other female employees; and (3) Stringer allegedly sexually harassed another female employee. If these allegations were found to be true, Plaintiff's proffered evidence might lead a reasonable factfinder to infer that a male supervisor treated females less favorably than males in the workplace, but these contentions provide no proof that gender played *any* role, let alone a "substantial" role, in Defendant's decision to terminate Plaintiff's employment. *Cf. Garges v. People's Light & Theatre Company*, 529 F. App'x 156, 162 (3d Cir. 2013) (affirming grant of summary judgment on plaintiff's gender discrimination claim under mixed motive theory

10

because plaintiff failed to present evidence that gender was a motivating factor for her termination). Accordingly, Plaintiff's gender discrimination claim also fails under the mixed-motive theory.

*Plaintiff's Title VII Racial Discrimination Claim*

Plaintiff also asserts that her employment was wrongfully terminated because of her race in violation of Title VII. This claim, like her gender discrimination claim, is governed by the *McDonnell Douglas* burden-shifting framework, and can also be established under the "mixed-motive" theory. However, when a plaintiff brings a so-called "reverse discrimination" claim, as Plaintiff does here, the *prima facie* elements are modified such that Plaintiff must show (1) "sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII," and (2) that the plaintiff has suffered an adverse employment action. *Iadimarco*, 190 F.3d at 161.

To meet her burden of race discrimination under both the mixed-motive theory and the *McDonnell Douglas* framework, Plaintiff relies on statements made by two supervisors, Besden and Stringer, both Caucasian, regarding Defendant's need to diversify its staff to accommodate Defendant's contract and referrals from CBH, its commitment to increase diversity within its employment ranks to better reflect and meet the needs of the surrounding community made in its various CBH proposals, and the purported change in Defendant's racial demographic of its counseling staff in 2011. Plaintiff's reliance on this evidence, however, is insufficient to meet her summary judgment burden.

As the Third Circuit recognized in *Iadimarco*, having a diverse workforce does not violate Title VII: "an employer has every right to be concerned with the diversity of its workforce, and the work environment." *Id.* at 164. Employer initiatives to increase racial

11

diversity within a workplace in order to "enable [an organization] to effectively service an increasingly diverse customer base" are lawful "to say nothing of the laudable goal of expanding the horizons of opportunity for more and more members of this great pluralistic society." *Reed v. Agilent Technologies, Inc.*, 174 F.Supp.2d 176, 186-87 (D. Del. 2001). Unless a plaintiff can demonstrate that a defendant employer's "approach to diversity had some negative impact upon his individual employment situation, the mere existence of a policy promoting diversity awareness is not evidence of discrimination" under Title VII. *Id.* at 185; *see also Opsatnik v. Norfolk Southern Corp.*, 2008 WL 763745, at *11 (E.D. Pa. March 20, 2008) (holding that "to use diversity concerns, without more, as evidence of discrimination would be irresponsible."), *aff'd*, 335 F. App'x 220 (3d Cir. 2009); *Lutes v. Goldin*, 62 F. Supp.2d 118, 132 (D.D.C. 1999) (holding that the plaintiff's failure "to link the existence of the [diversity] Plan to his individual claims of employment discrimination is fatal to his Title VII claim.").

Further, Plaintiff has not shown that Defendant's diversity goals, as evinced by Plaintiff's cited evidence, had any direct effect on Defendant's decision to terminate Plaintiff. For example, Plaintiff was unable to identify a single Caucasian counselor at Defendant who was fired and replaced by a minority. To the contrary, Defendant introduced uncontradicted evidence showing that it actually hired Caucasian counselors and fired minority counselors during the very period of time that Defendant was allegedly seeking to diversify its staff. Specifically, the evidence shows that Defendant hired 10 Caucasians, eight African Americans and one Latina and terminated the employment of five Caucasians (including Plaintiff) and two African Americans. These employment decisions resulted in a net gain of five employees who were Caucasian and six employees who were not. This margin of one more minority employee cannot be reasonably interpreted as evidencing that Defendant terminated Plaintiff because of her race.

Also overlooked by Plaintiff is the fact that she herself was hired on January 24, 2011, during the very period she alleges Defendant had determined to unlawfully increase its make-up of minority employees in response to contract proposals from CBH. In addition, Defendant hired at least one Caucasian female, Charlene Agnew, just days after Plaintiff's employment was terminated, who Mruk testified was Plaintiff's replacement.[4] In addition, Plaintiff's contention that she was fired because of her race is further hampered by the fact that the individuals responsible for Defendant's decision to terminate her, Besden and Stringer, were both Caucasian, like Plaintiff. *See Elwell v. PP&L, Inc.*, 47 F. App'x 183, 189 (3d Cir. 2002) (holding that plaintiff's discrimination claim was "further weakened" by the fact that the decision maker was in the same protected class as the plaintiff).

Under the totality of circumstances, no reasonable factfinder can conclude that race was a motivating factor for Defendant's decision to terminate Plaintiff's employment. In light of these facts, this Court finds that Plaintiff has failed to present:

> "sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that race . . . was a motivating factor for any employment practice," *Desert Palace*, 539 U.S. at 101, or

> "sufficient evidence to allow a fact finder to conclude that [Defendant] is treating some people less favorably than others based upon a trait that is protected under Title VII." *Iadimarco*, 190 F.3d at 161.

Plaintiff has not produced sufficient evidence to show that Defendant's decision to terminate her employment was in any way motivated by her race *or* by her gender.

---

[4] Defendant contends that Plaintiff's position was actually filled by a Caucasian woman. Regardless, the undisputed fact that Defendant hired a Caucasian woman to fill a similar role shortly after Plaintiff's termination refutes Plaintiff's contention that she was terminated because of her race.

*Evidence of Pretext*

In addition, this Court finds that Plaintiff has not failed to rebut Defendant's proffered legitimate reasons for her dismissal. To overcome Defendant's stated reasons for terminating her employment, Plaintiff must present evidence that could lead a reasonable factfinder to either (1) disbelieve defendant's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of defendant's actions. *Fuentes*, 32 F.3d at 764.

Here, Defendant has stated that the reasons for terminating Plaintiff's employment were: her low productivity, low patient numbers, and insufficient or deficient client information and/or documentation. Though Plaintiff disputes whether Defendant's proffered reasons for terminating her employment were the real reasons she was terminated, she does not dispute that at least some of the cited performance-related deficiencies *in fact* existed. For example, Plaintiff admitted that she never had the required 100 hours of counseling sessions in any particular month and that she was behind on her required client documentation. In light of these admissions and the lack of any evidence refuting Defendant's articulated legitimate non-discriminatory reasons, Plaintiff has failed to provide evidence "from which a fact-finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764.

*Plaintiff's Retaliation Claim Under the FLSA*

Plaintiff asserted a claim of retaliation under the Fair Labor Standards Act contending that she was terminated in retaliation for her complaints about how her time was recorded and other work-related issues. This claim is also subject to the *McDonnell Douglas* burden-shifting

14

framework. *Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002); *Jones v. Judge Technical Services, Inc.*, 2013 WL 5777159, at *7 (E.D. Pa. Oct. 25, 2013). Thus, to establish a *prima facie* case of retaliation, Plaintiff must present evidence to show that: (1) she engaged in activity protected under the FLSA; (2) she suffered an adverse employment action; and (3) a causal connection exists between this protected activity and the employer's adverse action. *Id.* Once a plaintiff establishes a *prima face* case of retaliation, the burden shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* The burden then shifts back to the plaintiff to present evidence from which a reasonable factfinder could disbelieve the employer's articulated reasons or find that such reasons were merely a pretext for retaliation. *Id.*

While it may be possible for Plaintiff to establish that she engaged in activity protected under the FLSA and that she subsequently suffered an adverse employment action, for the same reasons noted in the above analysis on the race and gender discrimination claims, Plaintiff cannot establish the existence of a causal connection between the protected activity and the termination of her employment. Therefore, her retaliation claim fails.

Notwithstanding, assuming *arguendo* that Plaintiff has offered sufficient evidence to establish a *prima facie* case of retaliation under the FLSA, for the same reasons set forth above, Plaintiff's retaliation claim falls short because she has failed to present evidence from which a reasonable factfinder could find that she sufficiently rebutted Defendant's legitimate, non-discriminatory reasons for her termination.

### *Plaintiff's Unpaid Wages Claims*

Plaintiff also asserts claims for unpaid wages under the FLSA and the analogous Pennsylvania statutes, based on her contention that Defendant failed to pay her for overtime

15

hours worked. Pursuant to the FLSA, an employer must pay employees who work more than forty (40) hours in a given week overtime at a rate of one and a half times their regular pay. 29 U.S.C. §207(a)(1). A plaintiff asserting an overtime claim under the FLSA or Pennsylvania equivalent bears the burden of proving that work was performed and not appropriately paid. *Sniscak v. Borough of Raritan*, 86 F. App'x 486, 487 (3d Cir. 2003). "An employee satisfies the burden of proof if he or she produces enough evidence to permit a court to make a fair and reasonable inference that the employee performed work for which he or she received improper compensation." *Rongchen v. Century Buffet & Rest.*, 2012 WL 113539, at *6 (D.N.J. Jan. 12, 2012). A plaintiff's sworn testimony is sufficient to meet her *prima facie* burden. *Id.*; *see also Reich v. Gateway Press, Inc.*, 13 F.3d 685, 702 (3d Cir. 1994); *Martin v. Selker Brothers, Inc.*, 949 F.2d 1286, 1297-98 (3d Cir. 1991). Where a plaintiff sufficiently adduces evidence that she worked overtime hours for which she was not compensated, the burden shifts to the defendant employer to provide evidence of the exact amount of time worked, or evidence that otherwise negates the inference to be gleaned from the plaintiff's evidence. *Id.*

Defendant argues that Plaintiff has failed to meet her initial burden of presenting evidence from which a factfinder could conclude that she was not compensated for overtime worked. Defendant's argument, however, focuses on Plaintiff's inability to testify precisely to the number of overtime hours worked during the relevant time period. Notwithstanding her imprecision, Plaintiff testified that she worked overtime hours for which she was not paid the requisite overtime rate of pay; *to wit*:

> Q. You say here that respondent did not compensate employees for the additional hours and would make sure computer time records did not exceed the maximum allowable hours?
>
> A. Right.
>
> Q. Did you work hours that you weren't compensated for?

16

> A. Yes.
>
> Q. How many hours did you work that you didn't receive compensation for during the year that you worked?
>
> A. I don't know exactly. My hours were 6 to 2:30. Most times I would come in and open up at 5. (Musa Dep. Tr., pp. 156-157).
>
> \*\*\*
>
> Q. Ms. Musa, I want you to take a look at, again, at Musa-6, particularly paragraph 11. Paragraph 11 says that you estimate that over the course of your employment with SOAR, you worked at least 390 overtime hours for which you received no monetary compensation. Did I read that correctly?
>
> A. Uh-huh.
>
> Q. Can you tell me how you calculated that you believe you're owed at least 390 overtime hours for work you performed that you never were paid for?
>
> A. I rarely, if ever, had lunch. Rarely. I was supposed to start at 6. I was there 5 or 5:30. I never left before 5. Sometimes I was there 8. Sometimes until 9 or 11. And I worked weekends, even though I didn't have groups anymore. (*Id.* at p. 164).

Though the parties dispute Plaintiff's allegation of uncompensated overtime worked and the accuracy of Defendant's time-keeping records, Plaintiff's testimony is sufficient to raise a genuine issue of material fact on this uncompensated pay issue and, thus, to overcome summary judgment. Therefore, Defendant's motion for summary judgment as to Plaintiff's unpaid wages claims is denied.

## CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment is granted as to *only* Plaintiff's claims of race and gender discrimination and retaliation; and denied as to Plaintiff's claim for overtime compensation under the FLSA and Pennsylvania's related statutes. An order consistent with this memorandum opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

ENTERED
NOV 18 2014
CLERK OF COURT

17